CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHAD J. PENNINGTON (MN Bar No. 0397620)[1]
(E-Mail:  Chad_Pennington@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-4740
Facsimile:  (213) 894-0081

Attorneys for Defendant
LUIS ARMANDO VICTORIA DOMINGUEZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 21-333-DMG |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| LUIS ARMANDO VICTORIA DOMINGUEZ, | |
| Defendant. | |

## I. INTRODUCTION

Luis Armando Victoria Dominguez has plead guilty to a single count of interfering with a flight crew, in violation of 49 U.S.C. § 46504.  *See* Indictment; *see also* ECF No. 28.

Mr. Dominguez respectfully requests that the Court impose a time-served sentence.  A time-served sentence, which totals an approximately 7-month custodial term, is the appropriate and just sentence applying the sentencing factors set forth in 18 U.S.C. § 3553(a).

---

[1] As a government attorney and a member of the New York and Minnesota State Bars, I have been admitted to practice before the United States District Court for the Central District of California.

Mr. Dominguez is 33 years old.  PSR ¶ 38.  He is the father of a nine year old son. *Id.* ¶ 45.  He is a lifelong resident of La Paz, Mexico, and has a large family residing there, including his son and his son's mother, with whom he remains close.  *Id.* ¶ 38.  He also has extended family living in the Sacramento area.  He has no known criminal history.  *Id.* ¶ 81.

Mr. Dominguez had a nurturing and safe childhood.  *Id.* ¶ 42. His parents were loving, Mr. Dominguez describes them as the "best parents in the world" and he and his siblings were well taken care of.  *Id.* ¶ 38.  Mr. Dominguez describes his family as getting along, and working out their minor issues through communication.  *Id.*  Overall, Mr. Dominguez hails from a supportive family.

Mr. Dominguez is an extremely hard worker, a trait he learned from his father.  *Id.* ¶ 41.  For much of his life, Mr. Dominguez helped his father run a fish processing business in Mexico.  *Id.* ¶ 56.

The work with his father is demanding, physical labor.  Mr. Dominguez would cut and clean fish, place them on ice, and deliver the packaged fish to vendors throughout Mexico.  *Id.*  The hours were long, the deliveries grueling, and the smell overwhelming at times.  Mr. Dominguez enjoys the work though, especially being part of a family operation.

Mr. Dominguez's job processing fish, unfortunately, also exposed him to bad habits.  The long shifts led to cocaine use to stay awake at work and, eventually, methamphetamine use and abuse.  *Id.* ¶¶ 50, 51.  A drug-work habit, ultimately became a personal, life altering habit, which contributed to where Mr. Dominguez finds himself today.

The conviction stems from a June 25, 2021, incident during a flight from Los Angeles to Salt Lake City.  On October 12, 2021, Mr. Dominguez submitted an open plea.  *See* ECF No. 28.  A factual basis was read into the record, and Mr. Dominguez agreed that he interfered with the flight crew.

Specifically, Mr. Dominguez plead guilty to interfering and intimidating United Airlines flight crew 5365, by banging on the cockpit door and exiting the aircraft through a secured, emergency door as the aircraft was taxing for takeoff. *See generally* ECF Nos. 26-28. Mr. Dominguez's conduct caused a great deal of concern among the flight crew and passengers and resulted in plane damage and travel disruption.

Mr. Dominguez knows that his conduct was wrong. He is sorry and remorseful for his actions that day. His intent was never to cause a scene.

On the contrary, Mr. Dominguez, who speaks speaks little to no English, felt overwhelmed that entire day at LAX. He struggled communicating in broken English with airport personnel, navigating the airport, and was uncertain whether he entered the correct flight. He had last used methamphetamine two days before the incident, *see* PSR ¶ 51, and was experiencing anxiety and panic as he entered the aircraft. *See id.* ¶¶ 48-49. Indeed, Mr. Dominguez has suffered from panic and anxiety for much of his life. *See id.* ¶¶ 48-49.

When Mr. Dominguez thought he heard that the flight was not traveling to Salt Lake City, he panicked. He attempted to communicate with the flight crew to ask the flight's destination, but the language barrier was insurmountable. He tried to let the pilots know that he wanted off the plane, that he wanted to travel to Salt Lake City, but the cockpit door was locked. He got scared, he panicked, he opened an emergency door, and he jumped off the plane -- a dangerous action, but an admitted and acknowledged mistake.

Mr. Dominguez is ready and prepared to move on. He has been sober while in-pretrial custody. He stays busy working at MDC, and is finding solace attending faith-based programming. *See id.* ¶ 48. He would like to attend drug programming when released. During the recent Omicron spike, MDC has substantially curtailed its programming. Pretrial custody, has been particularly hard recently, but Mr. Dominguez remains upbeat.

3

Mr. Dominguez has been candid about his offense.  On October 18, 2021, he spoke with Federal Aviation Administration ("FAA") officials.  He discussed why he jumped out of the plane.  His level of panic and anxiety, which contributed to his conduct.  His struggle with the language barrier at the airport and listening to the flight crews messages in a foreign language.  His challenges getting help at the airport.  Finally, he discussed how he was able to open the emergency door.  Hopefully, Mr. Dominguez's information is of future use to the FAA and for airline safety.

## II. SENTENCING POSTION

**PSR**

The PSR applied an 18 base offense level, under U.S.S.G. § 2AK.2(a)(2), stating that Mr. Dominguez reckless endangered the safety of the aircraft, and a criminal history category I.  *See* PSR ¶¶ 18, 35.  The PSR applied a three level acceptance of responsibility adjustment, for a 15 final, adjusted offense level.  *Id.* ¶ 27.  The PSR calculated a 18-24 month advisory guideline range.  *Id.* ¶ 64.

Mr. Dominguez does not object to the PSR's criminal history computation.  *See* PSR ¶ 81.  However, a base offense level of 9 is more appropriate here considering that though Mr. Dominguez interfered with the flight crew, there was no actual danger to the aircraft's safety as  the aircraft had not taken off.  *See* § 2AK.2(a)(4); *see e.g.*, *United States v. Poe*, 215 F.3d 1335, 2000 WL 369506 (9th Cir. 2000) (holding that endangerment under the applicable statute means: "a threatened or potential harm and does not require proof of actual harm" to the passengers or aircraft).  Understandably, the flight crew was concerned, but no threatened or potential harm was possible given Mr. Dominguez committed the interference while the aircraft was taxing and in slow motion.

In addition, though not addressed in the PSR, Mr. Dominguez is entitled to a downward departure under the U.S.S.G. § 5K2.20, aberrant behavior, in that the offense here: (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation for Mr. Dominguez from an otherwise law-abiding

4

life.  In fact, Mr. Dominguez has no known criminal history.  When analyzing Mr. Dominguez's: (1) mental and emotional conditions (not knowing English and feeling overwhelmed); (2) employment record (history of hard work); (3) record of prior good works (providing and working for his family); (4) motivation for committing the offense (panic and fear); and (5) efforts to mitigate the effects of the offense (speaking with the FAA on October 18, 2021, to explain what happened and why he acted the way he did), the departure is appropriate here.  Mr. Dominguez's interview with the FAA, hopefully, can help prevent future airline and passenger miscommunications.  Furthermore, Mr. Dominguez accepted the opportunity to speak with the FAA and his candor demonstrates that on balance, he has attempted to provide some measure of assistance to the authorities and take corrective action to the extent possible.

**§ 3553(a) factors**

Mr. Dominguez's lack of English proficiency and his and the flight crew's mutual language barrier created an unfortunate misunderstanding.  Mr. Dominguez simply wanted to get off the plane, not damage the aircraft or interfere with the flight crew.  Certainly not to scare the present passengers.  His state of mind, crucially, supports a time-served sentence.

Mr. Dominguez has no domestic or international criminal history.  Rather, he has a history of hard work and a wife and child he supports.  June 25, 2021, was uncharacteristic behavior,  a true aberration in a life of law abidance.

Mr. Dominguez has cooperated with investigators.  He has accepted responsibility and, he spoke with FAA investigators.  In effect, Mr. Dominguez has attempted to correct his mistake and help authorities understand what happened.

It is important to note as well, that Mr. Dominguez's challenges with substance abuse were borne out of overworking and long hours in the fish processing business in Mexico, not through criminality.  He has recently been attending faith-based programming and looks forward to attending substance abuse treatment.  Further custody may very well deprive him of an opportunity to receive addiction assistance.

Finally, Mr. Dominguez is currently serving pretrial custody during another COVID-19 surge.  Mr. Dominguez is an ideal candidate for a guidelines variance, and accordingly, would benefit from a prompt release and avoiding a prison-setting viral exposure.  Pretrial custody tends to be difficult time to serve, during a pandemic, pretrial custody is disproportionately difficult with programming coming to an abrupt end and longer periods of inmate isolation.  A time-served sentence reflects Mr. Dominguez's current confinement realities.

## CONCLUSION

For the foregoing reasons, Mr. Dominguez respectfully requests that the Court impose a time-served sentence.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  January 12, 2022

By  */s/ Chad Pennington*

CHAD PENNINGTON
Deputy Federal Public Defender